UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| LISA M. MUZZEY, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) Case No. 3:17-CV-796 JD |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Lisa Muzzey appeals the denial of her claims for disability insurance benefits and supplemental security income. For the following reasons, the Court will remand this matter to the Commissioner for further proceedings consistent with this opinion.

## BACKGROUND

Ms. Muzzey filed applications for disability insurance benefits and supplemental security income on January 10, 2014, alleging disability beginning December 13, 2010. Her date of last insured was December 31, 2016. Ms. Muzzey's application was denied initially, on reconsideration, and following two administrative hearings.[1] The ALJ found that Ms. Muzzey had some severe impairments but that she has not been disabled since December 13, 2010. *See* 20 C.F.R. §§ 404.1520, 416.920. The Appeals Council denied review of the ALJ decision, making the ALJ's decision the final determination of the Commissioner.

---

[1] Ms. Muzzey was represented by counsel at both hearings. At the first hearing, held on March 14, 2016, the ALJ heard testimony from Ms. Muzzey as well as vocational expert ("VE") Thomas Gushoff. After the March 2016 hearing, the ALJ referred Ms. Muzzey's file to a medical expert for an opinion on her symptoms. A second hearing was then held on October 12, 2016, at which the ALJ heard testimony from Ms. Muzzey, VE Leonard Fisher, and medical expert Dr. Manders.

1

**STANDARD OF REVIEW**

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). The Court will affirm the Commissioner's denial of disability benefits if it is supported by substantial evidence. *Craft v. Astrue,* 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). It must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue,* 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court will affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue,* 529 F.3d 408, 413 (7th Cir. 2008).

In this substantial-evidence determination, the Court does not reweigh evidence, resolve conflicts, decide questions of credibility or substitute the Court's own judgment for that of the Commissioner. *Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003). The Court does, however, critically review the record to ensure that the ALJ's decision is supported by the evidence and contains an adequate discussion of the issues. *Id.* The ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection; he may not ignore an entire line of evidence that is contrary to his findings. *Zurawski v. Halter,* 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must also "articulate at some minimal level his analysis of the evidence" to permit informed review. *Id.* Ultimately, while the ALJ is not required to address every piece of evidence or testimony presented, he must provide a "logical bridge" between the evidence and his conclusions. *Terry v. Astrue,* 580 F.3d 471, 475 (7th Cir. 2009).

**DISCUSSION**

Disability benefits are available only to individuals who are disabled under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). A claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations contain a five-step test to ascertain whether the claimant has established a disability. 20 C.F.R. §§ 404.1520, 416.920. These steps require the Court to sequentially determine:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

*Id.; Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, the Commissioner acknowledges disability. *See* 20 C.F.R. §§ 404.1520, 416.920. However, if a listing is not met or equaled, the ALJ must assess the claimant's residual functional capacity ("RFC") between steps three and four. The RFC is then used to determine whether the claimant can perform past work under step four and whether the claimant can perform other work in society at step five. *See id.* The claimant has the burden of proof in steps one through four, while the burden shifts to the Commissioner at step five to show

that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

Ms. Muzzey now challenges the ALJ's decision for improperly assessing her subjective complaints and for failing to consider the effects of her non-severe depressive disorder. She also argues that the ALJ failed to appropriately weigh the opinion evidence of several treating and examining sources. Because the ALJ failed to account for Ms. Muzzey's non-severe mental limitations in formulating the RFC, and because he provided insufficient reasons for discounting several of Ms. Muzzey's doctors' opinions, the Court will remand this matter for further consideration.[2]

**1.     Non-Severe Mental Limitation**

Ms. Muzzey argues that the ALJ erred by failing to consider her depressive disorder and related impairments when formulating the RFC. When formulating a claimant's residual functional capacity, the ALJ must consider all of the relevant evidence in the record, and must build "an accurate and logical bridge from the evidence to her conclusion." *Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014). In doing so, "an ALJ must consider the combined effects of all of the claimant's impairments," even those that are not severe. *Terry*, 580 F.3d at 477; *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) (noting that "the ALJ needed to consider the aggregate effect of this entire constellation of ailments"). Thus, even if a condition would not be disabling on its own, an ALJ must still consider the evidence relating to that condition and decide what limitations, if any, it would have on the claimant's ability to work. *Id.*

---

[2] Given these reasons for remand, the Court need not address whether the ALJ engaged in a proper assessment of Ms. Muzzey's subjective complaints (another issue Ms. Muzzey raises). Several of the ALJ's observations supporting his credibility finding, however, such as unknown etiology and lack of an assistive device, will be discussed within the context of the weight he assigned to Ms. Muzzey's treating physicians' opinions.

At step two, the ALJ determined that Ms. Muzzey's depressive disorder caused no more than a minimal limitation to her ability to perform basic mental tasks and was therefore non-severe. (R. 19). Assessing Ms. Forsey's mental functioning, the ALJ found that she had mild limitation in the area of concentration, persistence, and pace. (R. 20). Before moving on to step three, the ALJ noted that "the following residual functional capacity assessment reflects the degree of limitation the undersigned has found" in the mental functioning analysis. (R. 21).

The rest of the ALJ's opinion, however, makes no mention of Ms. Muzzey's non-severe mental limitation, and the ALJ never explains *why* or *how* Ms. Muzzey's limited abilities in the area of concentration, persistence, and pace deserve no part in the RFC. In other words, the ALJ summarily states that his RFC analysis reflects the mental functioning limitation he assessed at step two, but then fails to explain how it is that Ms. Muzzey's functional deficit translates to her specific ability to work. Thus, the ALJ failed to consider the combined impact of Ms. Muzzey's impairments "throughout the disability determination process." 20 C.F.R. §§ 404.1523, 416.923. He has left the Court unable to adequately review his RFC analysis.

Nor did the hypotheticals posed to the two VEs account for Ms. Muzzey's functional deficits in concentration, persistence, and pace (let alone the hypothetical on which the RFC was based). (R. 73-75, 115-17). *See Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014) ("[B]oth the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record."). The Seventh Circuit very recently addressed this exact shortcoming, noting "[a]gain and again, we have said that when an ALJ finds there are documented limitations of concentration, persistence, and pace, the hypothetical question presented to the VE must account for these limitations." *Winsted v. Berryhill*, --- F.3d ---, 2019 WL 494052, at *4 (7th Cir. Feb. 8, 2019) (citations omitted).

After receiving VE Gushoff's response to the hypothetical that mirrored the RFC, the ALJ then asked the VE whether someone with Ms. Muzzey's RFC, plus impairment-related "bad days" and a need to frequently change positions from sitting to standing and occasionally lay down, could sustain employment. (R. 74-75). Perhaps the ALJ thought he was addressing Ms. Muzzey's difficulty with concentration, persistence, and pace by presenting these additional hypotheticals; for example, at the second hearing, the ALJ remarked, "We already have adequate testimony from the prior hearing about inability to sustain work." (R. 118). But the ALJ provided no explanation of what he meant by "inability to sustain work," so these additional hypotheticals could just have likely been meant to account for Ms. Muzzey's physical limitations, such as her need for frequent breaks when performing ADLs due to pain (R. 627, 778), rather than her mental functioning limitation. *See Winsted*, 2019 WL 494052, at *4 (remanding where RFC's social interaction limitations did not correlate to claimant's limitations in concentration, persistence, and pace). And so, "[t]hough particular words need not be incanted," the Court cannot confidently conclude Ms. Muzzey's mental functioning limitation was properly incorporated into *any* of the hypothetical questions or into the RFC. *Id.; see also Young v. Barnhart*, 362 F.3d 995, 1005 (7th Cir. 2004) ("When the hypothetical question is fundamentally flawed because it is limited to the facts presented in the question and does not include all of the limitations supported by medical evidence in the record, the decision of the ALJ that a claimant can adjust to other work in the economy cannot stand.").

Notably, it appears the ALJ also disregarded testimony from VE Gushoff about a person with limitations in concentration, persistence, and pace. The above questions regarding changing positions and "bad days" involved a hypothetical individual who either would be off task 20 percent of the workday or would have two unscheduled absences per month. The VE responded

that neither individual could sustain employment, but his responses are not reflected in the ALJ's decision. The ALJ's failure to acknowledge this testimony only exacerbates his failure to consider Ms. Muzzey's mental functioning limitation in light of her reports that she feels the impact of her depressive disorder up to 25 percent of the time. (R. 776) (noting that Ms. Muzzey's depressive symptoms include poor concentration and a sad mood "about half of the day's but for less than half of each of those days"). *See Winsted*, 2019 WL 494052, at *4 (remanding where ALJ ignored VE testimony that a person who would either be off task 20 percent of the workday or have two unscheduled absences per month could not sustain employment).

Overall, the ALJ's failure to account for Ms. Muzzey's non-severe depressive disorder in his RFC analysis and the impact Ms. Muzzey's diagnosis has on her functional abilities in concentration, persistence, and pace requires remand. *Terry*, 580 F.3d at 477; *Golembiewski*, 322 F.3d at 918.

**2.      Weight of Medical Opinion Evidence**

Ms. Muzzey also challenges the evidentiary weight assigned by the ALJ to the opinions of three treating sources (Drs. King, Higgs-Coulthard, and Overman), one examining source (Dr. Hershberger), the four non-examining state agency physicians and psychologists (Drs. Neville, Shipley, Brill, and Ruiz), and a medical expert who did not examine Ms. Muzzey (Dr. Manders). The Court need only address Ms. Muzzey's contentions as to her treating physicians, however, because the ALJ failed to adequately support his reasons for giving their opinions "little weight." This error necessitates remand.[3]

---

[3] Ms. Muzzey is of course free to pursue her arguments as to the other sources on remand.

Treating physicians' opinions on the nature and severity of a claimant's medical condition are "entitled to controlling weight if [they] are well supported by medical findings and consistent with other record evidence." *Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018).[4] Critical to a meaningful review by this Court is the ALJ's construction of "an accurate and logical bridge from the evidence to his conclusion." *Terry*, 580 F.3d at 475; *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008) (requiring the ALJ minimally articulate his reasons for giving a treating physician's opinion lesser weight).

All three of Ms. Muzzey's treating physicians offered opinions on her inability to work. First, the ALJ dismissed several of these opinions with the following language: "They are vague and do not provide specific functional limitations as we use in these proceedings." (R. 24-25). This is not a sufficient reason. The issue of whether a claimant qualifies for benefits "depends on the applicant's physical and mental ability to work full time, and that is something to which medical testimony is relevant and if presented can't be ignored." *Garcia v. Colvin*, 741 F.3d 758, 760 (7th Cir. 2013). Here, Dr. Overman opined on April 1, 2011, that Ms. Muzzey was "unable to work." (R. 519). The ALJ singled out this opinion because Dr. Overman reached this conclusion "after seeing the claimant once" without also considering Dr. Overman's *subsequent* amplification after he treated Ms. Muzzey on April 22, 2011, that it would neither be practical nor safe for Ms. Muzzey to engage in *continuous walking or occasional lifting*—functions required by her then-job. (R. 24, 584).[5] *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-

---

[4] This treating-physician rule applies only to claims filed before March 27, 2017. *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018).

[5] By April 22, 2011, Dr. Overman had seen Ms. Muzzey on at least two other occasions: April 14 and April 19. (R. 525, 586). The Commissioner misconstrues both the record and the ALJ's opinion by arguing that Dr. Overman only saw Ms. Muzzey once. [DE 15 at 10]

pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding."). The ALJ further rejected Dr. King's general opinions that Ms. Muzzey was "unable to do any of her job functions" in May 2011, and that she was "totally disabled from any type of gainful employment" as of June 2011. (R. 646, 743). Again, however, the ALJ ignored a laundry list of severe functional limitations Dr. King observed in Ms. Muzzey in late May 2011 due to her "severe weakness and pain" and associated falls, which rendered her "unable to work in a useful occupation." (R. 543-44). And the ALJ discounted Dr. King's 2011 opinions without mentioning his detailed description of Ms. Muzzey's functional limitations in April 2012:

> At the present time, the patient is unable to do much in the way of sitting, standing, lifting, walking, or any other physical activity. Even when she sits, she can only sit for short periods of time without having to get up and move around a little bit. All of the multiple, serious medical conditions from which Lisa suffers render her totally unable to engage in gainful employment at this time.

(R. 645).

Granted, the ALJ is not bound by the doctors' broad conclusions that Ms. Muzzey could not work. *See Bjornson v. Astrue*, 671 F.3d 640, 647-48 (7th Cir. 2012) ("'[T]he *final* responsibility for deciding' residual functional capacity (ability to work—and so whether the applicant is disabled) 'is reserved to the Commissioner.'") (quoting § 404.1527(e)(2)) (emphasis added in *Bjornson*). But here, the treating physicians provided medical assessments—not just opinions regarding disability—of Ms. Muzzey's physical capabilities and functional limitations that should not have been ignored. *See Lambert*, 896 F.3d at 776 (remanding where ALJ discounted as an improper disability determination treating doctor's most recent opinion that claimant's chronic back pain limited him from performing sedentary work as ); *Lopez v. Berryhill*, 340 F. Supp. 3d 696, 704-05 (N.D. Ill. 2018) (remanding where ALJ rejected as an improper disability determination treating source's medical assessment of claimant's inability to

reach overhead and lift certain weights). And if the ALJ doubted whether the treating sources correctly understood the right "functional limitations," he "should have asked the doctor to specify more exactly what 'functions'" Ms. Muzzey could perform, "because a doctor may not be acquainted with the full range of jobs that a person with [Ms. Muzzey's] ailments could fill." *Garcia*, 741 F.3d at 760. Indeed, it appears from the physicians' reports that Ms. Muzzey's functional limitations would inhibit her ability to perform light work with some restrictions (her RFC as assigned by the ALJ).

The Commissioner argues in a footnote that the treating physicians' opinions about Ms. Muzzey's inability to work "plainly constitute an opinion of disability entitled to no special significance," as opposed to medical opinions. [DE 15 at 9, n.2] Thus, the Commissioner believes the ALJ need not have even considered these opinions because the responsibility for deciding issues of disability is reserved to the Commissioner alone. The Seventh Circuit has rejected this argument over and over. *See, e.g.*, *Lambert*, 896 F.3d at 776 ("Whether a claimant qualifies for benefits is a question of law, but a medical opinion that a claimant is unable to work is not an improper legal conclusion. Indeed, ALJs must consider medical opinions about a patient's ability to work full time because they are relevant to the RFC determination.") (internal citations omitted); *Garcia*, 741 F.3d at 760; *Bjornson*, 671 F.3d at 647. When the treating physicians opined that Ms. Muzzey could not work, they were "not invading any prerogative reserved to the Social Security Administration." *Bjornson*, 671 F.3d at 648. Instead, as just discussed, they supported those broader conclusions with the specific physical functional limitations they observed. The Commissioner is wrong here, and the ALJ provided insufficient

grounds for rejecting the treating physicians' opinions concerning Ms. Muzzey's ability to work.[6]

Although their findings demonstrate positive fibromyalgia trigger points and weakness in Ms. Muzzey's extremities, the ALJ next discounted Dr. Overman's and Dr. King's opinions because the medical record as a whole contains "no continuous notes of an antalgic gait with the need to ambulate with an assistive device" and no hospitalizations for serious symptoms. (R. 24). Here, the ALJ improperly substituted his own, non-professional opinion for that of Ms. Muzzey's treating physicians. *See Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("[A]n ALJ cannot play the role of doctor and interpret medical evidence."). For example, the ALJ assumed that Ms. Muzzey's symptoms were not disabling because they never required hospitalization. But this conclusion is premised on the ALJ's own independent medical determination—*not* that of an expert—that Ms. Muzzey must seek hospital treatment in order for her symptoms to be disabling. *See Fields v. Colvin*, 213 F. Supp. 3d 1067, 1072 (N.D. Ind. 2016) (remanding where ALJ assumed claimant's headaches were not disabling because they never required hospitalization). The same is true for the ALJ's comment about the lack of any prescribed assistive device or "continuous antalgic gait" in Ms. Muzzey's record: the ALJ assumed that disability requires a showing of constant antalgic gait and the use of an assistive

---

[6] The ALJ also assigned "very little weight" to Dr. King's February 2011 opinion that Ms. Muzzey was unable to work (R. 649) solely because "it is apparent this form was filled out by somebody other than the doctor. The doctor merely signed this assessment." (R. 24). This reasoning falls flat. For one, ALJs are not handwriting experts, so the ALJ's conclusion that someone other than Dr. King filled out the form is nothing more than unfounded speculation. Second, even if someone other than Dr. King filled out the form, that does not mean that Dr. King never *performed* the corresponding evaluation of Ms. Muzzey nor *formulated* the recorded observations. His signature is on the form—the contents of the report are *his*. The ALJ made no effort to explore perfectly reasonable explanations for the conflict he perceives here, such as the possibility that Dr. King dictated these findings to a nurse or other medical professional. The ALJ therefore did not provide the requisite "logical bridge" when rejecting Dr. King's February 2011 report on these grounds. *Terry*, 580 F.3d at 475; *Berger*, 516 F.3d at 545.

device, but he cited no medical opinion to support that conclusion or help explain his inference. Further compounding this improper assessment is the fact that the ALJ ignored evidence suggesting that Ms. Muzzey's lower extremity weakness did not manifest itself through her gait: "*Between falling*, she knows of no significant gait abnormalities or balance problems, and her walking is otherwise unchanged." (R. 432) (emphasis added). He also ignored Ms. Muzzey's testimony that she needs to "have something to hold onto" when she leaves her home, even though she has not been prescribed an assistive device. (R. 87). While the ALJ "cannot disregard medical evidence simply because it is at odds with [his] own unqualified opinion," that is precisely what occurred here. *Murphy*, 496 F.3d at 634.

All that remains, then, is the ALJ's rationale that because "no known etiology was determined for [Ms. Muzzey's] symptoms, other than the fibromyalgia diagnosis," her treating physicians' opinions should receive little weight. This reasoning alone cannot carry the day for the Commissioner, though. *See Vanprooyen v. Berryhill*, 864 F.3d 567, 572 (7th Cir. 2017) (remanding ALJ's rejection of treating source's opinion that relied mainly on claimant's reports of pain because "[a]n ALJ may not discredit a claimant's testimony about her pain and limitations solely because there is no objective medical evidence supporting it.") (internal quotations and citation omitted). In all these ways, the ALJ failed to adequately support his decision to discount the opinions of Ms. Muzzey's treating physicians. This requires remand.

## CONCLUSION

The remedy for the ALJ's shortcomings is further consideration, not the immediate award of benefits. And so, for the reasons stated herein, the Court **REVERSES** the Commissioner's decision and **REMANDS** this matter to the Commissioner for further proceedings consistent with this opinion. The Clerk is directed to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: February 20, 2019

                                                         /s/ JON E. DEGUILIO
                                          Judge
                                          United States District Court